## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| JEFFREY LOUISSAINT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **Civil Action No.** |
| v. ) | **22-12158-FDS** |
| ) | |
| DOUGLAS A. COLLINS, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

### <u>MEMORANDUM AND ORDER ON MOTION TO DISMISS</u>

**SAYLOR, J.**

This is a civil action alleging workplace discrimination and retaliation. Plaintiff Jeffrey Louissaint has brought suit against his former employer, the Department of Veterans Affairs ("VA"), and various supervisors and human-resources employees at the agency.[1] In essence, the complaint alleges that plaintiff was subjected to a hostile work environment on the basis of his attention deficit hyperactivity disorder ("ADHD") and that he was retaliated against for requesting a reasonable accommodation and filing a discrimination complaint with the EEOC. He is proceeding *pro se*.

Plaintiff is a registered nurse. For a period of approximately six months in 2018, he was a probationary employee at the VA Hospital in Jamaica Plain, Massachusetts. He worked in the dialysis unit, providing direct patient care. The complaint itself alleges that he made multiple mistakes—some of which he acknowledges were "major errors" (Compl. at 17)—involving

---

[1] This suit originally named then-current Secretary of Veterans Affairs, Denis R. McDonough, as a defendant. The current Secretary of Veterans Affairs is Douglas A. Collins.

patient care, including at least one instance where he fabricated a patient test result.  It alleges that "instead of taking the opportunities to correct my mistakes . . . [m]y manager and preceptor decided to remove me from certain patient care procedures."  (*Id.*).  He was demoted in May 2018 and eventually terminated in August 2018.  He contends that the mistakes were caused by his ADHD and inadequate training and supervision.

Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  In substance, defendants contend that the complaint fails to assert valid claims for discrimination based on a hostile work environment and for unlawful retaliation for engaging in protected conduct.

The claim based on a hostile work environment is clearly inadequate.  There are no allegations in the complaint that any animosity (or intimidation, ridicule, or insult) was directed to plaintiff because of his ADHD, or that any co-worker or supervisor ever referred to his ADHD or any symptoms in any disparaging manner.  In fact, there are no allegations that any of his co-workers were even aware of his disability at the time the alleged harassment occurred.

The claim alleging unlawful retaliation, although potentially problematic in multiple respects, appears to be sufficient to survive a motion to dismiss.  The complaint alleges two acts of protected conduct:  a request for a reasonable accommodation on May 18, 2018, and the filing of an EEOC complaint on July 9, 2018.  The July 9 filing took place after the VA had issued a notice of separation, scheduled to take effect July 13; it is doubtful whether that would be sufficient, standing alone, to support a retaliation claim.  *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001).  But the complaint also alleges that he was demoted a few days after he requested an accommodation and ultimately terminated after that request was finally denied. It is at least plausible, for present purposes, that those employment actions were taken, at least in

part, in response to protected conduct.  At a minimum, any assessment of the validity of the retaliation claim should await the development of the factual record.

Accordingly, and for the following reasons, the motion will be granted in part and denied in part.

## I.    <u>Background</u>

Unless otherwise noted, the facts are drawn from the complaint, documents referred to in the complaint or attached to it, and certain other filings concerning defendant's motion to dismiss.[2]  The complaint refers to and incorporates a statement of facts allegedly submitted to "investigators."  (Compl. at 9).[3]  The facts alleged in the complaint and those alleged in the separate statement of facts are at times inconsistent.  In certain instances, even the separate statement of facts is itself disjointed, difficult to follow, and internally inconsistent and often unclear.  Given plaintiff's *pro se* status and the favorable standard of review at the motion-to-dismiss stage, the Court will endeavor to construe the complaint in the light most favorable to plaintiff.

---

[2] On a motion to dismiss, the court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment:  (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).  A court may also take judicial notice of both the EEOC right-to-sue letter and charge as public records.  *See Gallo v. Bd. of Regents of Univ. of California*, 916 F. Supp. 1005, 1007 (S.D. Cal. 1995) ("[T]he Court may consider both the EEOC right to sue letter and the EEOC charge . . . as public records subject to judicial notice."); *see also Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (a court deciding a motion to dismiss may consider public records that would otherwise be subject to judicial notice under Fed. R. Evid. 201).

[3] The complaint and attached statement of facts are combined in a single document.  That document, as a whole, will be referred to as the "complaint."

A.    **Factual Background**

Jeffrey Louissaint was employed as a registered nurse at the VA Hospital in Jamaica

Plain, Massachusetts, on a two-year probationary basis starting at approximately the beginning of

2018.  (*Id.* at 9, 11, 28).

According to the complaint, Louissaint was supervised by Kristen Leonard, the managing

nurse, and Katie Judd, an assistant nurse manager.  (*Id*. at 17-22).  Although the timing and

sequence of events is unclear, it appears that Louissaint was not satisfied with the orientation,

training, and feedback he received from Leonard and Judd in his first few months in the position.

(*Id*.).[4]

On May 10, 2018, Judd sent an email to Leonard reporting an incident in which

Louissaint incorrectly drew "labs" that "resulted in an incorrect lab value."  (*Id.* at 19).  The

complaint alleges that Judd never mentioned that error to Louissaint or provided him with an

opportunity to correct it.  (*Id.*).

Beginning on May 13, 2018, Louissaint made a series of "major errors" while working in

the dialysis unit.  (*Id.* at 17).  At some point between May 15 and May 18, he failed to take a

patient's blood pressure when required, and separately made a dosing error.  (*Id*. at 19-22,

26-29).  On May 18, he documented a dialysis patient's blood-oxygen level as 98% when in fact

the patient had refused to submit to a blood-oxygen reading at all.  (*Id.*).[5]

---

[4] The complaint alleges, without further detail, that "On February 23rd-April 21 2018: Katie Judd provides Kristen Leonard with false reports of my actions via e-mail. (defamation)."  (*Id*. at 19).

[5] As to that episode, the complaint states that the patient was refusing "an O2 reading" and plaintiff "assess[ed] his lung sounds and it sounded clear so I just wrote 98%."  (Compl. at 20).  When he advised Ms. Judd of what he had done, she "looked at what I wrote down and said, 'you can't write that shit and cross it out and [write] patient refused,' then she proceeded to slam the patient[']s chart down."  (*Id*.).  It further alleges that he informed the Associate Chief Nurse, Theresa Presley, that he had made the error because he was "overwhelmed."  (*Id*. at 20).

The complaint alleges that in response to those incidents, Louissaint's supervisors used harsh language in their reprimands, did not provide remedial training, and did not provide him the opportunity to remedy his mistakes. (*Id.*).[6]  At some point, he contacted Ruhina Fort, an Employee Assistance Program ("EAP") specialist, to report Leonard's allegedly hostile behavior toward him. (*Id.* at 21).  He also explored filing an EEOC complaint, but apparently did not do so at that time, either because "the portal was down" or he decided to "tr[y] to work it out with . . . Leonard." (*Id.* at 21, 23).

On May 18, 2018, Louissaint reported to Leonard that he was feeling "stressed out" in the dialysis unit.[7]  He also informed her, for the first time, that he had ADHD. (*Id*. at 19).[8]  He also told her that he had consulted with his personal physician about "going back on Adderall" to treat his ADHD and that he was looking into "getting a second opinion as to what was causing [his] anxiety." (*Id.*).

During the May 18 discussion, Louissaint asked if he could be reassigned to a different position as an accommodation. (*Id.* at 20, 22).  Leonard responded by stating that "the agency does make accommodations," and she would speak to Theresa Presley, the Associate Chief Nurse, about the possibility. (*Id.*).  Soon thereafter, Leonard presented him with an EAP form to sign, which he did. (*Id.*).[9]  He then applied for reassignment to "the specialty clinic." (*Id*. at 22).

---

[6] The complaint states that "[t]his was also that same week when I completely broke down as a human." (*Id.*).

[7] The complaint generally seems to indicate that this discussion occurred on May 18, although there are also indications that it may have occurred on May 16. (Compl. at 10, 22).  For purposes of this memorandum, the Court will use the May 18 date.

[8] The complaint alleges that up until that time Louissaint had been "reluctant to disclose my mental disability (ADHD)." (*Id*. at 17).

[9] The timing of Leonard's production of the EAP letter and Louissaint's signing is unclear, as is the nature of the document.

According to the complaint, his application was denied on June 13 despite allegedly being qualified for the position.  (*Id.* at 22-23).

On May 22, 2018, Louissaint received an interim proficiency evaluation from Leonard in which she rated his performance as "unsatisfactory."  (*Id.* at 11).   She concluded, among other things, that he "cannot safely manage dialysis patients independently despite multiple rounds of remedial training."  (*Id.* at 18).  According to the complaint, many of the critiques contained in the evaluation were inaccurate.  (*Id.*).

On May 24, 2018, Louissaint was "demoted" to working in the escort service.  (*Id.* at 11).[10]

On June 13, 2018, Louissaint was notified that a "Summary Probationary Review and Convening of the Nurse Professional Standards Board ("PSB")" was to occur on June 27, 2018.  (*Id.* at 24).  That hearing was to review his "ability to reach an acceptable level of competency as a nurse in the Dialysis Unit despite multiple attempts to orient [him]."  (*Id.*).

On June 15, 2018, Louissaint contacted Kathleen Gabriel, a representative from his union, to discuss his allegedly hostile work environment and the possibility of reassignment.  (*Id.* at 11, 22-23).  He also inquired about the possibility of being put on a Performance Improvement Plan ("PIP"); according to the complaint, that request was denied the same day.  (*Id.* at 11).  Gabriel allegedly told him that "the agency no longer wants to give PIP options to workers."  (*Id.* at 23).  According to the complaint, Gabriel emailed Ruhina Fort, the EAP specialist, stating that she had informed Theresa Presley of his complaints of harassment and that she had corroborated his reports of harassment with several witnesses.  (*Id.*).

---

[10] The complaint also states that on May 23, 2018, Louissaint was "reassigned" to audit charts.  (*Id.* at 10). It is unclear whether he received different demotions, one day apart.

On June 18, 2018, Louissaint met with Latasha Raymond, an EEO specialist, to discuss his experience in the dialysis unit. (*Id.*).

On June 21, 2018, Louissaint advised the PSB that he suffered from ADHD. (*Id*. at 24).

On June 22, 2018, Louissaint provided a letter from his doctor indicating that he had ADHD and had "resumed treatment" and that, left untreated, his condition may impact his ability to perform his job. (*Id.*). The complaint alleges that the PSB did not incorporate that information into its final summary, did not inform him of his rights, and did not provide his representative with a copy of the PSB summary. (*Id.* at 11).

On June 27 or 28, 2018 (the complaint is inconsistent), the PSB recommended that Louissaint be terminated. (*Id.* at 11, 24). It issued a Notice of Separation During Probation, to take effect on July 13, 2018. (*Id.*).

On June 28, 2018, Louissaint filed a complaint with the VA Harassment Prevention Program ("HPP"). (*Id.* at 11). The HPP then initiated an investigation into the allegedly hostile environment and management practices of the dialysis unit. (*Id.*).

On July 6, 2018, Louissaint met with Cecilia McVey, the Chief Nurse. (*Id.* at 24). He discussed his situation with her, informed her of his ADHD diagnosis, and told her that he had been seeking reassignment since February 2018. (*Id.*). According to the complaint, he asked McVey if he could remain working in the escort service for the time being, and she obliged. (*Id.*).

According to the complaint, on July 9, 2018, Louissaint "officially filed" a complaint with the EEOC alleging discrimination and harassment. (*Id.* at 25).[11] That complaint did not

---

[11] It appears that July 9, 2018, is the date of his initial contact with the Office of Resolution Management, and that his complaint was actually filed with the EEOC on October 20, 2018. (*See* MTD Ex. B at 2).

allege that he was retaliated against for engaging in protected activity.  (*See id.*; Mot. to Dismiss ("MTD") Ex. B).

The complaint alleges that on July 10, 2018, McVey told Louissaint that he could seek reasonable accommodations for his disability while his claims were being investigated; he apparently did submit such a request.  (Compl. at 25; MTD Ex. A).[12]

On July 18, 2018, Louissaint met with McVey to provide her with a copy of his rebuttal to the PSB's findings.  (Compl. at 30).  According to the complaint, she told him that she would "hold off on making a final decision and gather more facts for others," and suggested that he "hold off on submitting a rebuttal . . . until the agency completed its fact finding."  (*Id.*).

According to the complaint, on August 8, 2018, McVey informed Louissaint that the HPP investigation "was complete" and that his request for a reasonable accommodation was "closed." (*Id.* at 31).  McVey further informed Louissaint that his termination was "in effect" and was to take effect on August 15, 2018.  (*Id.*).[13]  According to the complaint, she "encouraged him to pursue other complaint[] processes after [his] separation."  (*Id.* at 31).

On August 15, 2018, Louissaint submitted a letter of resignation stating that he had been constructively discharged.  (*Id.*).  His subsequent requests to file grievances on August 20 and 29, 2018, were denied.  (*Id.* at 11).

---

[12] The complaint also appears to allege, however, that he either did not actually submit the request or otherwise withdrew it.  (*See* Compl. at 25) ("I did attempt to use a reasonable accommodation but was advised by the union representative that I should see if my medication alone [would] correct my performance.  I concurred and inform[ed] the agency that I didn't want to exhaust my reasonable accommodation, and wanted to evaluate my performance/function in accordance with my medication therapy."); (*Id.* at 11, 30).

[13] The complaint alleges that "[t]he HPP determined that there was not enough substantial evidence which [led] to Ms. McVey's final decision rendered to me on August 8, 2018, to separate with the agency by August 15, 2018."  (*Id.* at 29).

### B.    Procedural Background

On September 19, 2022, Louissaint received a right-to-sue letter from the EEOC covering his allegations of discrimination and harassment.  He filed his complaint in this court on December 19, 2022, asserting claims for retaliation and disability discrimination resulting in a hostile work environment.

Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted.  In response, Louissaint filed a motion for "summary judgment."  Based on its content, and for present purposes, the Court will treat that motion as an opposition to the motion to dismiss.

## II.    Standard of Review

On a motion to dismiss made pursuant to Rule 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

Because plaintiff is proceeding *pro se*, the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *see also Instituto de Educacion Universal Corp. v. United States Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000). However, while *pro se* complaints "are accorded 'an extra degree of solicitude' . . . even a *pro se* plaintiff is required to 'set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Wright v. Town of Southbridge*, 2009 WL 415506, at *2 (D. Mass. Jan. 15, 2009) (quoting *Adams v. Stephenson*, 1997 WL 351633, at *1 (1st Cir. June 23, 1997) (per curiam)).

### III.    <u>Analysis</u>

The complaint appears to assert claims under Title VII, various federal regulations, and 5 U.S.C. § 2301.  (Compl. at 7).  Neither the regulations cited nor § 2301 provide a private right of action.  And while Title VII does provide a private cause of action for discrimination "based on race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-16(a), (c), the complaint makes no mention of any of those classifications.  Instead, the complaint essentially alleges that plaintiff was discriminated against on the basis of disability.

In light of plaintiff's *pro se* status, the Court will construe the complaint liberally and treat it as asserting claims for hostile work environment and retaliation under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*  That statute provides an implied private cause of action to "obtain relief for [disability] discrimination on the part of the federal government and its agencies." *Bartlett v. Dep't of the Treasury (I.R.S.)*, 749 F.3d 1, 7 (1st Cir. 2014) (quoting *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 304 (5th Cir. 1981)).

### A.    Claims Against VA Employees

In addition to the Secretary of Veterans Affairs, the complaint names 18 individual supervisors and colleagues as defendants.  "[T]he Rehabilitation Act incorporate[s] the remedies and procedures of Title VII. . . .  Hence, the only proper defendant with respect to a suit brought under . . . the Rehabilitation Act is the agency head . . . ."  *Meyer v. Runyon*, 869 F. Supp. 70, 76 (D. Mass. 1994).  Accordingly, the claims asserted against all defendants other than the Secretary will be dismissed.  *Cf. Soto v. U.S. Postal Serv.*, 905 F.2d 537, 539 (1st Cir. 1990) (holding, in a Title VII action against the United States Postal Service, that "[a] district court should dismiss claims brought against all other defendants, including the U.S. Postal Service and the local postmaster").

### B.    Claim of Hostile Work Environment

To state a hostile-work-environment claim under the Rehabilitation Act, the complaint must adequately allege that plaintiff "was (1) disabled, (2) that he was subjected to a hostile work environment, and (3) that the hostility was directed at him because of his disability." *Quiles-Quiles v. Henderson*, 439 F.3d 1, 5 (1st Cir. 2006).

There is no dispute that plaintiff's ADHD qualifies as a disability.  The complaint also alleges that he was subjected to some degree of hostility at work.  However, he must show that the relevant hostility was directed at him because of his ADHD, not for other reasons, such as his workplace performance.  *See Quiles-Quiles*, 439 F.3d at 7-8 ("[A]n employee claiming harassment must demonstrate that the hostile conduct was directed at him because of a characteristic protected by a federal anti-discrimination statute.")

The complaint does not contain a single allegation of "discriminatory intimidation, ridicule, [or] insult" targeted to plaintiff's disability—indeed, it does not even allege that a co-worker or supervisor ever referred to his ADHD or a symptom of his ADHD.  *Meritor Sav.*

11

*Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986).[14]  It does not allege that non-disabled employees were treated any better; in fact, it alleges that other employees were treated similarly.  (Compl. at 29).  And the complaint does not allege that plaintiff's co-workers or supervisors were even aware of his disability at the time of the alleged hostile behavior.  Whichever version of the complaint's timeline is credited, it alleges that the first time plaintiff notified anyone of his ADHD was on May 18, 2018—after the last incident of allegedly hostile behavior.  (*See id.* at 10, 19).  Plaintiff's co-workers and supervisors could not have discriminated against him on the basis of a disability of which they were not aware.  *See Quiles-Quiles*, 439 F.3d at 8 ("[C]onduct does not constitute actionable harassment [when] it occurred before [the supervisor] knew that [plaintiff] was suffering from depression.").

Accordingly, the complaint fails to state a claim of discrimination based on a hostile-work-environment, and that claim will be dismissed.

### C.    Claim of Retaliation

To state a claim for retaliation, the complaint must adequately allege that "(1) [plaintiff] . . . engaged in protected conduct, (2) he . . . was subjected to an adverse action by the defendant, and (3) there was a causal connection between the protected conduct and the adverse action."  *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 41 (1st Cir. 2012).[15]

### 1.    Exhaustion of Administrative Remedies

Federal regulations provide that "persons who believe they have been discriminated

---

[14] The alleged hostile behavior appears to have consisted of such things as yelling, eye-rolling, and the slamming down of a patient chart, as well as unfair responses to acknowledged workplace-performance issues. (Compl. at 18-20).

[15] "The prima facie case is an evidentiary model, not a pleading standard."  *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 51 (1st Cir. 2013).  Nevertheless, "the elements of a prima facie case may be used . . . to shed light upon the plausibility of the claim."  *Id.* at 54.  And "a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial—in a discrimination case, the prima facie standard . . . ."  *Id.*

against on the basis of . . . disability . . . must consult a[n EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). Although the First Circuit has not determined whether claims brought under the Rehabilitation Act are subject to dismissal for failure to exhaust such administrative remedies, the weight of authority supports a finding that "a *federal employee* who brings an action under the Rehabilitation Act must exhaust administrative remedies before proceeding to court." *Bartlett*, 749 F.3d at 8 (emphasis in original) (noting that every circuit to have considered the issue has determined that federal employees' claims under the Rehabilitation Act are subject to dismissal for failure to exhaust administrative remedies); *see also Vazquez-Rivera v. Figueroa*, 759 F.3d 44, 48 n.2 (1st Cir. 2014).

A plaintiff's "cause of action" in federal court under the Rehabilitation Act "is limited to those discrimination and retaliation allegations . . . that were previously the subject of a formal EEO complaint." *Morales-Vallellanes v. Potter*, 339 F.3d 9, 18 (1st Cir. 2003). Here, plaintiff did not make any retaliation claims in his EEOC complaint.

There are, however, instances in which a lawsuit may "include a claim of retaliation not made to the agency." *Clockedile v. New Hampshire Dep't of Corr.*, 245 F.3d 1, 4 (1st Cir. 2001). Specifically, "retaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency—*e.g.*, the retaliation is for filing the agency complaint itself." *Id.* at 6. Therefore, failure to exhaust does not necessarily bar plaintiff's claim alleging retaliation for filing of the EEOC complaint.

And under the related "scope of the charge" doctrine, "[a]n administrative charge is not a blueprint for the litigation to follow." *Powers v. Grinnell Corp.*, 915 F.2d 34, 38 (1st Cir. 1990). Instead, "the critical question is whether the claims set forth in the civil complaint come within

the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).

The EEOC investigation appears to have covered the discussion with Leonard during which plaintiff disclosed his ADHD diagnosis and asked about reassignment; plaintiff's internal report to the EAP concerning Leonard's behavior toward him; and his demotion, his negative proficiency report, and the VA's initial termination decision. (Compl., Ex. 3 at 1-2). To the extent plaintiff's retaliation claims are based upon those allegations, they would have fallen within the scope of the EEOC's investigation. Therefore, while those allegations may not have been formally framed under a heading of "retaliation" in his EEOC complaint, the purpose of the exhaustion requirement as to those allegations was arguably satisfied—that is, "to give the EEOC an opportunity to settle disputes through conference, conciliation, and persuasion before an aggrieved party is permitted to file a lawsuit, as well as to put defendants on notice of the substance of the charge." *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992). Thus, plaintiff will not be barred from bringing claims for retaliation based on the same factual allegations made in his EEOC charge.

## 2. **Causal Connection**

A request for a reasonable accommodation is, without question, protected conduct. "[T]he act of requesting in good faith a reasonable accommodation is a protected activity under . . . the Rehabilitation Act." *Solomon v. Vilsack*, 763 F.3d 1, 15 (D.C. Cir. 2014). According to the complaint, plaintiff did so on May 18, 2018.[16] Similarly, filing an EEOC

---

[16] The complaint also alleges that plaintiff submitted a request for reasonable accommodation seeking reassignment on July 9 or 10. However, the complaint also appears to indicate that he either withdrew that request or notified the VA that he would no longer be pursuing it. It is unclear whether the July request was ever actually denied.

complaint is clearly protected conduct.  According to the complaint, plaintiff initiated that process on July 9, 2018.  (Compl. at 25).[17]

It is undisputed that plaintiff suffered an adverse employment action; the complaint alleges that he was demoted on May 23, 2018, and terminated, or constructively terminated, on August 15, 2018.[18]

The remaining question is whether the complaint has plausibly alleged a "causal connection" between his protected conduct and the VA's decisions to demote and ultimately terminate him.  "Temporal proximity alone can suffice to 'meet the relatively light burden of establishing a prima facie case of retaliation.'"  *DeCaire v. Mukasey*, 530 F.3d 1, 19 (1st Cir. 2008) (quoting *Mariani-Colon v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 224 (1st Cir. 2007)).

Here, a period of less than a week passed between his request for an accommodation (May 18) and his demotion (May 23), and less than a month passed between his initiating the EEOC process (July 9), and the VA's final decision to terminate his employment (August 8). For present purposes, that is sufficient to permit a reasonable inference of causation.  Whether these actions were taken for other reasons—such as, for example, maintaining patient safety— must await resolution at a later stage of the proceedings.

It is noteworthy that the VA had already issued a Notice of Separation During Probation on June 28, prior to the initiation of the EEOC proceeding.  (Compl. at 11, 24).  As a general

---

[17] It is not clear when his supervisors became aware that he had initiated the EEOC process; however, making all reasonable inferences in plaintiff's favor, the Court will assume that they became aware that day.

[18] For an employment action to be adverse, "[t]ypically, the employer must either (1) take something of consequence from the employee, say, by discharging or demoting h[im], reducing h[is] salary, or divesting h[im] of significant responsibilities . . . or (2) withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering h[im] for promotion after a particular period of service."  *Blackie v. State of Me.*, 75 F.3d 716, 725 (1st Cir. 1996) (internal citations omitted).

matter, "[e]mployers need not suspend previously planned [actions] upon discovering that a [discrimination] suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001).  "Were the rule otherwise, then a disgruntled employee, no matter how poor his performance . . . , could effectively inhibit a well-deserved discharge by merely filing, or threatening to file, a discrimination complaint." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 829 (1st Cir. 1991).

Plaintiff's original separation letter, issued on June 28, 2018, indicated that his termination was to take effect on July 13, 2018.  (Compl. at 24).  If he had been terminated on July 13, his termination clearly could not have been in retaliation for filing an EEOC complaint on July 9, because the termination *decision* had already been made by then.  However, Cecilia McVey, the Chief Nurse, appears to have delayed the effective date of termination, allowing plaintiff to continue working in the escort service, and then reinstated the termination decision upon that investigation's conclusion on August 8, 2018.  (*Id.* at 24, 29).  The complaint alleges that she granted that reprieve on July 6, 2018, before the filing of the EEOC complaint.  (*Id.* at 24).

A reasonable inference from those allegations is that she held his termination in abeyance during the pendency of the HPP investigation, and that his ultimate termination was based on the same grounds as the initial termination decision made on June 28.  Put another way, a reasonable inference is that she held off terminating plaintiff for reasons that were entirely favorable to him—that is, to see whether the investigation substantiated any of his claims.  In that case, his termination was simply the VA "proceeding along lines previously contemplated," and not retaliation for filing a complaint.  *Breeden*, 532 U.S. at 272.

16

In any event, the Court will not dismiss the claim of retaliation arising from his request for accommodation and his initiation of EEOC proceedings. Again, the temporal proximity of those adverse employment actions to his protected activity allows for the presumption of causation at the pleading stage.[19]

## IV.    __Conclusion__

For the foregoing reasons, defendants' motion to dismiss is DENIED as to plaintiff's claim of unlawful retaliation under the Rehabilitation Act against the Secretary of Veterans Affairs, and is otherwise GRANTED. Plaintiff's motion for summary judgment, treated as an opposition to defendants' motion to dismiss, is DENIED without prejudice.

**So Ordered.**


/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  August 20, 2025                    United States District Judge

---

[19] Plaintiff's confidential report to Ruhina Fort, the EAP specialist, cannot serve as the basis for a retaliation claim. To begin, according to plaintiff himself, that report was confidential, and the complaint does not allege that Fort either retaliated against him or disclosed that initial report to anyone else. Furthermore, "while [the Rehabilitation Act] shields an employee who opposes conduct that may not actually prove to be discriminatory, the employee must at the very least have a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 226 (1st Cir. 2012). At the time plaintiff initially made the report to Fort, he had no reasonable basis for inferring that the hostility about which he complained reflected disability-based discrimination. Thus, he has "no objectively reasonable foundation for a retaliation action" under the Rehabilitation Act arising from his report to Ms. Ruhina Fort.